**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 16-cv-1221-WJM-KLM

MIRELLA IVONNE AVILA-RAMOS,

      Petitioner,

v.

JOHN L. KAMMERZELL, United States Marshal for the District of Colorado, and
KENNETH DEAL, Acting United States Marshal for the District of Colorado,

      Respondents.

---

## ORDER DENYING PETITION FOR HABEAS CORPUS

---

The United Mexican States ("Mexico") accuse Petitioner Mirella Ivonne Avila-
Ramos ("Avila-Ramos") of conspiring to have her husband murdered in Mexico.  Very
briefly stated, the principal evidence asserted by Mexican authorities against her
comprises: (1) the fact that two attempts were made on Avila-Ramos's husband's life
(the second one succeeding) and Avila-Ramos was present for both but completely
uninjured; (2) text messages between Avila-Ramos and a man with whom she was
having an extramarital affair, Arturo Heriberto Herrera Rey ("Herrera"), along with close-
in-time text messages in turn between Herrera and the gunman who carried out the
murder, all of which tend to show, aside from general motive, that Herrera and the
gunman knew details of Avila-Ramos's husband's movements that they likely would not
have known unless learned from Avila-Ramos; (3) Herrera's report that Avila-Ramos
had expressed a wish that her husband had died in the first attempt on his life; and (4)
a Mexican court's conclusion, in the trial of Herrera for the murder, that he had

conspired with Avila-Ramos to commit the murder.

Mexico seeks Avila-Ramos's extradition to stand trial for that alleged offense. United States Magistrate Judge Nina Y. Wang ("the Magistrate Judge") certified that Avila-Ramos is extraditable from the United States to Mexico under federal statutes governing extradition and under the extradition treaty between the United States and Mexico, 31 U.S.T. 5059, 1980 WL 309106 ("Extradition Treaty").  (*See United States v. Avila-Ramos*, 15-mj-1087-NYW, ECF No. 181 (D. Colo. May 6, 2016) ("Certification Order").)[1]

Avila-Ramos now seeks habeas corpus relief from the Certification Order, invoking the general habeas statute, 28 U.S.C. § 2241.  (ECF No. 1.)  Avila-Ramos was represented by court-appointed CJA counsel through the briefing on the merits of her habeas petition, although counsel later moved to withdraw because certain of his CJA payment requests had yet to be approved, apparently due to lack of sufficient CJA funds budgeted for this matter.  (ECF No. 26 at 4.)  The Court granted that motion to withdraw.  Soon afterward, however, Avila-Ramos's counsel filed a motion to *reconsider* this ruling, claiming that he never truly meant to withdraw, but simply wanted to bring the hardship of non-payment to the Court's attention.  (ECF No. 33 ¶ 6.)  The Court denied reconsideration, expressing its "concerns about the propriety of [counsel's] approach" and otherwise finding "lack of good cause."  (ECF No. 37.)  Counsel then filed a motion to reconsider the denial of reconsideration (ECF No. 38), which the Court also denied (ECF No. 43).  Finally, Avila-Ramos herself filed a Motion for Appointment

---

[1] Per 18 U.S.C. § 3184, United States Magistrate Judges may review and issue final rulings on extradition requests.

of Counsel through the Court's civil *pro bono* program, D.C.COLO.LAttyR 15.  (ECF No.

40.)  That motion remains pending.

For the reasons explained below, the Court finds that Avila-Ramos is not entitled

to habeas relief, and therefore denies her petition.  With regard to her Motion for

Appointment of Counsel, the Court construes it broadly for appointment of counsel from

any source available to the Court (not just from the civil *pro bono* panel), and grants it,

appointing the Federal Public Defender to assist Avila-Ramos to consider her options at

this point.

## I.  STANDARD OF REVIEW

Extradition is governed generally by 18 U.S.C. §§ 3181–96.  The Magistrate

Judge thoroughly explained the extradition process (Certification Order at 1–4) and the

Court need not repeat that explanation here, except to the extent it becomes relevant to

certain arguments addressed below.  For present purposes, it is enough to state that

the Magistrate Judge's task was to review whether the Government had satisfied the

following six requirements:

> (1) the court has subject matter and personal jurisdiction;
> (2) a valid extradition treaty exists between the United States
> and the foreign requesting state; (3) the required documents
> were presented in accordance with United States law,
> translated and duly authenticated by the United States
> consul; (4) the pending criminal charge in the foreign
> requesting state is appropriate under the extradition treaty;
> (5) the Respondent is the person sought; and (6) there is
> sufficient evidence to establish probable cause that a crime
> was committed and that the person before the court
> committed that crime.

(Certification Order at 9.)  Assuming the Magistrate Judge finds all elements in favor of

the Government, the Magistrate Judge then certifies that the respondent may be

extradited, but does not actually order the respondent's extradition—that remains within the Secretary of State's discretion.  (*Id*. at 4.)

Habeas review of the Magistrate Judge's certification does not permit this Court to conduct a *de novo* review of all elements that the Magistrate Judge examined. Rather, this Court is limited to "[1] determining whether the magistrate judge had jurisdiction, [2] whether the offense charged is within the treaty, and . . . [3] whether there was any evidence warranting finding that there was a reasonable ground to believe the accused was guilty."  *Smith v. United States*, 82 F.3d 964, 965 (10th Cir. 1996).

The third element (review of the probable cause determination) is intentionally "narrower" than the task the Magistrate Judge undertakes to decide whether probable cause exists.  *Peters v. Egnor*, 888 F.2d 713, 717 (10th Cir. 1989).  Whereas the Magistrate Judge must decide whether the facts presented would "warrant a person of reasonable caution to have the belief that an offense has been or is being committed by" the respondent, *Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011), the habeas court applies a "lenient standard" of review, asking only whether "there is *any* evidence of probable cause," *Peters*, 888 F.2d at 717 (internal quotation marks omitted; emphasis in original).

## II.  ANALYSIS

### A.    Jurisdiction

Avila-Ramos argues that the Magistrate Judge lacked subject matter jurisdiction because extradition proceedings supposedly were not properly instituted against her.

4

(ECF No. 1 at 30–35; ECF No. 20 at 5, 11–15.)  Assuming without deciding that this argument actually addresses subject matter jurisdiction, the Court rejects it.  The Court's reasoning requires a certain amount of background on the process of extraditing an individual to Mexico.

The Extradition Treaty contemplates that most extradition proceedings will begin through that Treaty's Article 10, which reads in relevant part as follows:

> 1.- The request for extradition shall be made through the diplomatic channel.
>
> 2.- The request for extradition shall contain the description of the offense for which extradition is requested and shall be accompanied by:
>
> > a) A statement of the facts of the case;
> >
> > b) The text of the legal provisions describing the essential elements of the offense;
> >
> > c) The text of the legal provisions describing the punishment for the offense;
> >
> > d) The text of the legal provisions relating to the time limit on the prosecution or the execution of the punishment of the offense;
> >
> > e) The facts and personal information of the person sought which will permit his identification and, where possible, information concerning his location.
>
> 3.- In addition, when the request for extradition relates to a person who has not yet been convicted, it shall be accompanied by:
>
> > a) A certified copy of the warrant of arrest issued by a judge or other judicial officer of the requesting Party;
> >
> > b) Evidence which, in accordance with the laws of the requested Party, would justify the apprehension and commitment for trial of the person sought if the offense had

been committed there.

* * *

5.- All the documents that must be presented by the requesting Party in accordance with the provisions of this Treaty shall be accompanied by a translation in the language of the requested Party.

6.- The documents which, according to this Article, shall accompany the request for extradition, shall be received in evidence when:

a) In the case of a request emanating from the United States, they are authenticated by the official seal of the Department of State and legalized by the manner prescribed by the Mexican law;

b) In the case of a request emanating from the United Mexican States, they are certified by the principle diplomatic or consular officer of the United States in Mexico.

But Article 10 is not the only way an extradition proceeding may begin.  Article 11 establishes a summary procedure by which the requesting party may seek the accused's "provisional arrest," followed by the full Article 10 requirements within 60 days:

1.- In the case of urgency, either Contracting Party may request, through the diplomatic channel, the provisional arrest of an accused or convicted person.  The application shall contain a description of the offense for which the extradition is requested, a description of the person sought and his whereabouts, an undertaking to formalize the request for extradition, and a declaration of the existence of a warrant of arrest issued by a competent judicial authority or a judgment of conviction issued against the person sought.

2.- On receipt of such a request, the requested Party shall take the necessary steps to secure the arrest of the person claimed.

> 3.- Provisional arrest shall be terminated if, within a period of 60 days after the apprehension of the person claimed, the executive authority of the requested Party has not received the formal request for extradition and the documents mentioned in Article 10.

Avila-Ramos was arrested on a provisional warrant, and the full Article 10 request was submitted 59 days later.  (*See* Certification Order at 5.)  She argues, however, that the provisional arrest was improper because the Secretary of State never certified—prior to directing the United States Attorney to institute proceedings—that Mexico's request for a provisional arrest was properly made.  (ECF No. 1 at 30–31.) "[C]oncededly," she says, "a plain reading of the [Extradition Treaty] does not explicitly set forth such a requirement."  (*Id*. at 31.)  But she claims that the requirement exists independent of the treaty language—apparently as a matter of federal common law— whenever formal extradition requirements are relaxed, such as in the provisional arrest process.  (*Id*. at 30–31.)

As support for this proposition, Avila-Ramos principally cites four cases.  The first is *Grin v. Shine*, 187 U.S. 181, 193–94 (1902), where the Supreme Court quoted the then-existing extradition treaty with Russia, which happened to contain a requirement that the Secretary of State review any request for provisional arrest before forwarding it to law enforcement officials.  Nothing in *Grin* turned on this requirement, nor did the Supreme Court suggest that the requirement would have existed independent of the treaty in question.  Accordingly, *Grin* provides no support for Avila-Ramos's argument.

The second case Avila-Ramos cites is similar.  In *Charlton v. Kelly*, 229 U.S. 447, 450 (1913), the Supreme Court quoted the then-existing extradition treaty with

Italy, which contained a pre-approval condition similar to that in the Russian treaty.  But again, nothing turned on that provision, and the Supreme Court nowhere suggested that the requirement existed independent of the treaty.  Thus, *Charlton* likewise provides no support for Avila-Ramos's argument.

The third case Avila-Ramos cites is *Blaxland v. Commonwealth Director of Public Prosecutions*, 323 F.3d 1198 (9th Cir. 2003).  *Blaxland* was a civil lawsuit against certain Australian officials who allegedly perjured themselves to secure the plaintiff's extradition from the United States to Australia on charges of which he was ultimately acquitted.  *Id*. at 1201–02.  In a general description of the extradition process (not in any statement about the differences between provisional and formal arrest), the Ninth Circuit included the following statement: "After the request has been evaluated by the State Department to determine whether it is within the scope of the relevant extradition treaty, a United States Attorney, if so instructed, files a complaint in federal district court seeking an arrest warrant for the person sought to be extradited."  *Id*. at 1207.

Avila-Ramos correctly points out that the Ninth Circuit did not derive this requirement from the express terms of any treaty.  (ECF No. 1 at 31.)  Indeed, the U.S.-Australia extradition treaty, like the U.S.-Mexico treaty at issue here, contains no requirement that the State Department certify the propriety of an extradition request, provisional or formal, before forwarding it to the relevant United States Attorney (although, as with Mexico, the certification of the senior U.S. diplomatic official in Australia is required for the formal request to be received into evidence).  *See* 27 U.S.T. 957, 1976 WL 166695, arts. XI–XII.  Where, then, did the Ninth Circuit locate the

8

requirement of State Department pre-approval?

*Blaxland* derives this proposition from a "see generally" cite to *Barapind v. Reno*,

225 F.3d 1100, 1105 (9th Cir. 2000), which encompasses the following:

> The extradition process is ordinarily initiated by a formal
> request from a foreign government to the Department of
> State, which[,] along with the Department of Justice,
> evaluates whether the request is within the scope of the
> relevant extradition treaty between the United States and the
> requesting nation.  *See Cornejo-Barreto*[ *v. Seifert*], 218
> F.3d [1004,] 1009 [(9th Cir. 2000)].  Once approved, the
> United States Attorney for the judicial district where the
> person sought is located files a complaint in federal district
> court seeking an arrest warrant for the person sought.  *See
> id*.

*Id*.  The cited *Cornejo-Barreto* decision, in turn, cites the entirety of the Restatement

(Third) of Foreign Relations Law ("Restatement") § 478 (1986).  *See Cornejo-Barreto*,

218 F.3d at 1009, *overruled on other grounds by Trinidad y Garcia v. Thomas*, 683 F.3d

952 (9th Cir. 2012).  The body of the Restatement § 478 says nothing about the State

Department's duty to pre-approve extradition requests (provisional or formal).  However,

the commentary contains the following:

> Ordinarily, a request for extradition from the United States is
> submitted by the requesting state through diplomatic
> channels to the Department of State.  If the Department
> considers the request to be within the applicable treaty, it
> transmits the request to the Department of Justice.  The
> Department of Justice determines whether the request
> meets the conditions for extradition, and if so forwards the
> request to the United States Attorney for the judicial district
> in which the person sought is believed to be located.  The
> United States Attorney files a complaint based on the
> request with the appropriate district judge or magistrate and
> applies for a warrant for arrest of the person sought.

Restatement § 478 cmt. a (citations omitted).  This again says nothing about the

distinction between provisional and formal requests.  Moreover, the very next sentence belies any notion that this describes some sort of federal common law requirement: "A request for extradition may also be filed with a court directly by a diplomatic or consular officer of the requesting state, or by an attorney authorized to act on behalf of that state, but this practice has become rare."  *Id*.  If this possibility exists, however rare, it undermines any claim that State Department pre-approval is required.  This is likely why the Restatement couches the entire first portion of the comment with "[o]rdinarily" instead of "by law" or some similar mandatory language.

Moreover, the Restatement elsewhere acknowledges that it derives its rules from "a network of treaties, national laws, and state practice differing in detail but forming a common pattern of extradition law and procedure."  Restatement § 475 cmt. a. Perhaps most U.S. extradition treaties contain a provision—such as those contained in the treaties with Russia and Italy discussed in *Grin* and *Charlton*, respectively— requiring the State Department to sign off on any extradition request before a United State Attorney can seek an arrest warrant.  If so, then the Restatement's description of such preapproval probably is what "ordinarily" happens.  But Avila-Ramos does not show how this supposedly ordinary practice can then morph into a jurisdictional requirement applicable to all extradition treaties.

Thus, *Avila-Ramos*'s citation to *Blaxland* is unavailing.  *Blaxland* offers nothing more than a generic description of extradition procedure derived ultimately from the Restatement, which is itself generic and which describes State Department pre-approval only as an ordinary practice, not a requirement (much less a *jurisdictional* requirement).

Avila-Ramos's fourth citation is to *Prasoprat v. Benov*, 421 F.3d 1009 (9th Cir. 2005), which quotes and cites *Blaxland*'s generic description of extradition procedure, including the supposed need for State Department pre-approval. *Id*. at 1012. Nothing in *Prasoprat* turned on this alleged requirement. Thus, *Prasoprat* is no more authoritative than *Blaxland* on this matter.

Avila-Ramos's attempt to provide a policy explanation for the supposed pre-approval requirement is also flawed. Avila-Ramos says that State Department pre-approval "must be required" for provisional arrests because of the abbreviated requirements for such arrests as compared to formal extradition requests. (ECF No. 1 at 31.) Avila-Ramos seems to be implying that State Department pre-approval is a sort of due process overlay on the provisional arrest process—something needed to protect potential subjects of extradition in the absence of the detailed formal submission. This argument further implies, however, that the provisional arrest process would somehow *violate* due process absent State Department pre-approval, as opposed to the formal requirements which satisfy due process on their own. Avila-Ramos cites nothing to support such a claim. In particular, Avila-Ramos does not explain why the Senate could not have ratified a treaty that contained no provisional/formal distinction and instead contained a single form of extradition request that required nothing more than what is currently required for a provisional request under the Extradition Treaty. *See Charlton*, 229 U.S. at 463–64 ("Congress has a perfect right to provide for the extradition of criminals in its own way . . . and to declare that foreign criminals shall be surrendered upon such proofs of criminality as it may judge sufficient.").

11

In short, the lack of State Department pre-approval for Avila-Ramos's provisional arrest did not deprive the Magistrate Judge of jurisdiction to hear the extradition request.

In her reply brief, Avila-Ramos extends her jurisdictional argument to assert that essentially everything involved in the process of requesting extradition is "jurisdictional": "[The Magistrate Judge] never acquired lawful jurisdiction due to . . . Mexico's failure to file valid requests for Petitioner's provisional arrest and a formal request for extradition that conforms to the requirements of the U.S.-Mexico extradition treaty."  (ECF No. 20 at 5–6 (underscoring in original).)  Avila-Ramos particularly argues that "the evidence proffered in Mexico's request for provisional arrest and in its formal request was not complete and was not accurately-translated.  As a result, the evidence presented by Mexico did not vest jurisdiction in the magistrate judge's court . . . ."  (*Id*. at 6.)  But nothing in the Extradition Treaty or any other authority suggests that the completeness of the evidence or the accuracy of translation is a *jurisdictional* issue.  Indeed, if Avila-Ramos were correct, then habeas review of extradition proceedings would be almost entirely *de novo*, rather than the limited review currently provided.  Avila-Ramos is therefore not entitled to habeas relief on lack-of-jurisdiction grounds.

## B.      Charged Offense Within the Treaty

Avila-Ramos does not claim that the crime with which she is charged in Mexico is outside of the Extradition Treaty, nor could there be any such challenge, given that murder is the first item in the Treaty's list of extraditable offenses.  *See* Extradition Treaty, app'x § 1.

**C.      Probable Cause**

Finally, the Court turns to whether "there is *any* evidence of probable cause."

*Peters*, 888 F.2d at 717 (internal quotation marks omitted; emphasis in original).  The

Court finds this standard satisfied.  The evidence against Avila-Ramos is entirely

circumstantial, and is not overwhelming.  (*See* ECF No. 17 at 12–15 (summary of

evidence presented).)  It nonetheless plausibly suggests motive and opportunity to have

her husband killed.  The Court therefore cannot say that there is no evidence that would

"warrant a person of reasonable caution to have the belief that [the] offense [of

conspiring to murder her husband] has been . . . committed by" Avila-Ramos.  *Koch*,

660 F.3d at 1239.  Thus, the Court cannot overturn the Magistrate Judge's probable

cause finding.

### III.  APPOINTMENT OF COUNSEL & TEMPORARY STAY

As for her motion for appointment of counsel, although Avila-Ramos specifically

seeks counsel from the Court's civil *pro bono* panel, the Court construes her motion

more broadly for appointment of counsel from whatever source the Court may draw

upon.  Avila-Ramos has already established her financial eligibility for appointment of

counsel under the Criminal Justice Act, 18 U.S.C. § 3006A.  (*See* 15-mj-1087-NYW,

ECF Nos. 6, 14.)  The Criminal Justice Act permits the Court to appoint an attorney

from the Federal Public Defender's office for financially eligible persons "seeking relief

under [28 U.S.C. §] 2241," so long as the Court "determines that the interests of justice

so require."  18 U.S.C. § 3006A(a)(2)(B), (3)(B).  The Court determines that the

interests of justice require appointment of the Federal Public Defender's office, at a

minimum, to provide proper advice to Avila-Ramos regarding the appropriateness of an

appeal.  Accordingly, the Court will grant Avila-Ramos's motion for appointment of

counsel and appoint the Federal Public Defender's office.

In addition, to provide Avila-Ramos and her new counsel an opportunity for such

consultation, the previously-entered stay of execution on the Certification Order (*see*

16-cr-170, ECF No. 189) will be extended for 30 days after entry of judgment.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      Avila-Ramos's petition for a writ of habeas corpus (ECF No. 1) is DENIED;

2.      Avila-Ramos's Motion for Appointment of Counsel (ECF No. 40) is GRANTED

and the Federal Public Defender's Office is APPOINTED to represent Avila-

Ramos;

3.      The stay of execution on the Certification Order entered at 16-cr-170, ECF No.

189, is EXTENDED for 30 days after entry of judgment; and

4.      The Clerk shall enter final judgment in favor of Respondents and shall terminate

this case.

Dated this 11th day of January, 2017.

BY THE COURT:

William J. Martínez
United States District Judge

14